ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKILAH WHITLEY,

        Petitioner,

- against -

SABINA KAPLAN, Superintendent,

        Respondent.

10 Civ. 6657 (VB)(LMS)

REPORT AND
RECOMMENDATION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/9/13

TO: THE HONORABLE VINCENT BRICCETTI, U.S.D.J.[1]

 Petitioner Akilah Whitley, proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge her state court conviction for the crimes of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and aggravated harassment in the second degree. Pet. 1. After a jury trial, Petitioner was sentenced to determinate terms of imprisonment of twenty years, with five years' post-release supervision, on the attempted murder and assault counts; a determinate term of imprisonment of ten years, with five years' post-release supervision, on the weapons count; and a one-year definite sentence on the harassment count. Sentencing Hrg. Tr. (November 14, 2007) (herein, "S") at 25-26, 28. All sentences are to run concurrently. Id.

 Herein, Petitioner raises the following grounds for habeas relief:

---

[1] Your Honor referred this matter to me for a Report and Recommendation on August 23, 2011. Order of Reference, Docket Entry (herein, "D.E.") 16.

1

(1) Petitioner was deprived of a fair trial by the erroneous admission of hearsay evidence which bolstered the testimony of the complainant;

(2) the verdict was against the weight of the evidence or was based upon legally insufficient evidence;

(3) there was no evidence to link Petitioner to the crime;

(4) Petitioner's trial counsel provided ineffective legal assistance by failing to undertake an adequate investigation, prepare for trial, or advise Petitioner of sentencing exposure if convicted. Pet. 4.

For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this Petition should be dismissed.

## I. BACKGROUND

### A.  The Crime

In 2006, Maxine Campbell discovered she was pregnant. The father of her child was Ryon "Ray" Servis, who had previously fathered four of Petitioner's children. Trial Transcript (herein "T") 366-67. Although Campbell and Petitioner had known each other since middle school, they had little contact until August 2006, when Petitioner began to harass Campbell. T: 369-82. This harassment included Petitioner's verbal threat to kill Campbell and her unborn child. T: 372.

On November 18, 2006, Petitioner attempted to make good on her threat. That evening, Maxine Campbell and her daughter visited her grandmother, Cleopatra Marks, at her home in Mount Vernon, New York. T: 382-83. Campbell was then almost nine months pregnant. T: 457. As Campbell was walking back from a nearby pizzeria with dinner for her family, she observed Petitioner and a male passenger in a gray Toyota Corolla parked outside Marks's house.

T: 383-87. Petitioner got out of the car, and after a brief exchange with Campbell, shot Campbell in the stomach with a revolver from less than a foot away. T: 387, 390. Campbell heard two more shots as she ran into the street. T: 391. Petitioner chased after her, grabbed her by the hair, and beat her head with the butt of the gun. T: 391. The male passenger of the Corrolla then drove Petitioner away. T: 393. The grey Corolla, which was registered to Petitioner's sister, was later found by police at the address Campbell had given them. Resp't's Mem. 5.

Despite being in the "most excruciating pain," Campbell managed to walk the short distance[2] to her grandmother's house and banged on the door. T: 393-94. When Marks asked who was at the door before opening it, Campbell stated, "It's me . . . it's me. Akilah just attacked me." T: 394. Marks also testified that when she opened the door and asked Campbell what was wrong, Campbell told her, "Akilah attacked me." T: 519. Mount Vernon Police Officer Steven Dempsey was only a few blocks away when he heard the radio dispatch concerning the attack, and he reached Campbell within minutes of receiving the alert. T: 497. Campbell testified that Dempsey arrived about fifteen minutes after she reached her grandmother's front porch. T: 469. When Dempsey found her, she was still on the porch, crying hysterically and clutching her abdomen in pain. T: 497. When Dempsey asked her who attacked her, Campbell identified Petitioner by name, gave a possible address where she might be found, and a partial plate of the car she was driving. T: 497-99. Campbell was then taken by ambulance to Jacobi Medical Center, where she was rushed to an operating room. T: 695, 698. Campbell underwent an

---

[2]At trial, the People established the distance from where Petitioner left Campbell to her grandmother's house with visual aids not provided to the Court. Respondent states, and Petitioner does not dispute, that this distance was short. Resp't's Mem. 4.

emergency Caesarean section, as well as surgery to remove a part of her intestine that had been pierced by the bullet. Both she and her baby boy survived.

**B.      Procedural History**

On September 27, 2007, following a jury trial, Petitioner was convicted of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree, and aggravated harassment in the second degree. T: 838-39. On November 14, 2007, Westchester County Court Judge Robert Neary sentenced Petitioner to determinate terms of imprisonment of twenty years, with five years' post-release supervision, on the attempted murder and assault counts; a determinate term of imprisonment of ten years, with five years' post-release supervision on the weapons count; and a one-year definite sentence on the harassment count. S: 25-26, 28. All sentences were ordered to run concurrently.

Petitioner then filed a timely appeal of her conviction. Petitioner's sole claim on direct appeal was that she was deprived of a fair trial by the erroneous admission of hearsay evidence which bolstered the testimony of the sole eyewitness. Resp't's Ex. 2. The Appellate Division, Second Judicial Department, affirmed Petitioner's conviction. People v. Whitley, 59 A.D.3d 746 (2d Dep't. 2009). Petitioner sought leave to appeal this decision to the New York Court of Appeals, but that Court denied leave on May 11, 2009. People v. Whitley, 12 N.Y.3d 861 (2009). The Court denied reconsideration several months later. People v. Whitley, 13 N.Y.3d 750 (2009). Petitioner timely filed the instant Petition on August 8, 2010. Pet. 6.

## II. DISCUSSION

**A.      Standard of Review**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971). In the interests of comity and expeditious federal review, "'[s]tates should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General of the State of New York, 696 F.2d 186, 190 - 91 (2d Cir. 1982). The exhaustion requirement of the federal habeas corpus statute is set forth in 28 U.S.C. § 2254(b), (c):

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied. See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts

5

are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the due process clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: "(a) reli[ed] on pertinent federal cases employing constitutional analysis, (b) reli[ed] on state cases employing constitutional analysis in like fact situations, (c) assert[ed] . . . the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) alleg[ed] . . . a pattern of facts that is well within the mainstream of constitutional litigation." See Daye, 696 F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. Klein, 667 F.2d at 282. Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted. Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)). There is, however, another avenue available for exhaustion purposes. A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction. See Klein, 667 F.2d at 282 (citing Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979)). If collateral relief is denied, the

6

petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial. Id. at 283.

Generally, a state prisoner has one year from the date his or her conviction becomes final to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitations period is tolled while ". . . a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). After a petitioner has met these threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**B.   Petitioner's Claims**

   **1.   *Petitioner's claim that she was deprived of a fair trial by the trial court's admission of certain hearsay evidence does not present a federal constitutional claim cognizable on habeas review.***

Petitioner first claims that she was deprived of a fair trial when the trial court erroneously admitted certain hearsay evidence. Marks and Dempsey both testified that minutes after the attack, Campbell identified Petitioner as her assailant. T: 497-499, 519. The trial court admitted these statements as excited utterances, over defense counsel's objections. T: 318-21, 513-14.

7

Petitioner claims that the trial court's ruling was erroneous because (a) such statements were hearsay and, as they were not properly characterized as excited utterances, should not have been admitted, and (b) these statements improperly bolstered Campbell's trial testimony.

Petitioner previously raised this claim on direct appeal to the Appellate Division, where it was denied on the merits. Resp't's Ex. 2. On appeal, Petitioner argued that the state court had erred in admitting the statements as excited utterances, as that hearsay exception requires the statements to have been made while the declarant was still experiencing the stress of a startling event. Petitioner argued that Campbell was not still experiencing that stress when she identified Petitioner as her assailant, as too much time had elapsed from when Campbell was attacked and when she identified Petitioner as her assailant to Marks and Dempsey, so their testimony should not have been admitted. Id. at 9-10 (citations omitted). The Appellate Division disagreed, concluding that the trial court "correctly permitted testimony as to statements identifying the defendant as the assailant, made by the complainant just minutes after she had been shot in the abdomen at close range, and while she was still in 'excruciating pain,' to be admitted into evidence as excited utterances." People v. Whitley, 59 A.D.3d 746 (2d Dep't. 2009). Petitioner included this claim in her letter application seeking leave to appeal to the Court of Appeals, which was denied by that Court. People v. Whitley, 12 N.Y.3d 861 (2009). Thus, as the state courts adjudicated this claim on the merits, AEDPA's deferential standard of review applies to this Court's analysis of this claim.

Petitioner's claim challenges the state court's application of state evidentiary law. Generally, state court evidentiary rulings, even if erroneous, do not present the kind of federal constitutional claims for which habeas relief may be granted. See Estelle v. McGuire, 502 U.S. 62, 67- 68 (1991)("It is not the province of a federal habeas court to reexamine state-court

8

determinations on state-law questions."). In order for a state court's evidentiary ruling to present a federal constitutional claim, the ruling must have deprived the petitioner of his or her right to a fundamentally fair trial. Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985). A state court's erroneous admission of evidence results in a deprivation of this right if the evidence in question, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. at 19.

Petitioner's claim here does not rise to the level of a federal constitutional claim. First, it does not appear that the state court's admission of this evidence was erroneous as a matter of state law, for the reasons stated by the Appellate Division in rejecting this claim: namely, that even though a few minutes passed between the shooting and Campbell's statements, she was still experiencing the stress of the attack, and lacked the capacity to fabricate an answer, when she identified Petitioner as her assailant. See People v. Caviness, 38 N.Y.2d 227, 230-231 (1975)(defining excited utterance exception); People v. Fratello, 92 N.Y.2d 565 (1998)(victim's statement to police identifying defendant as assailant, made ten minutes after defendant shot him, admitted as excited utterance).

Second, even if the trial court's decision to admit the statements was a misapplication of state evidentiary law (which it was not), the trial court's ruling would still not rise to the level of a deprivation of Petitioner's right to a fair trial because, viewed in the context of the entire record, the statements were not "crucial, critical, highly significant" to the outcome of Petitioner's case. Collins, 755 F.2d at 19 (internal quotation and citation omitted). Even if the statements had been excluded, there was ample other evidence of Petitioner's guilt, in particular from Campbell's testimony recounting the attack and the harassment which led up to it.

Moreover, Campbell was acquainted with Petitioner, and was fully competent to provide an independent identification of Petitioner at trial as her assailant. Campbell's excited utterance identifying petitioner was not the crux of the evidence implicating Petitioner. Rather, Campbell's clear and certain identification of Petitioner during trial was the crucial evidence.

Furthermore, Petitioner's contention that the trial court erred in admitting Dempsey's and Marks's testimony because it improperly bolstered Campbell's testimony cannot constitute a basis for habeas relief. Although bolstering is prohibited in New York state courts, "this Circuit has never regarded the practice as inimical to trial fairness." Nieves v. Fischer, No. 03 Civ. 9803(DC), 2004 WL 2997860, at *7 (S.D.N.Y. Dec. 28, 2004)(collecting cases).[3] Even if admitting the statements had improperly bolstered Campbell's testimony, no constitutional violation would have occurred.

Thus, I conclude, and respectfully recommend that Your Honor should conclude, that this claim should be denied.

### 2. *Petitioner's remaining claims are unexhausted.*

#### A. **Petitioner's second and third claims are unexhausted and procedurally defaulted.**

Petitioner's second and third claims for habeas relief, which challenge the sufficiency or weight of the evidence against her, are unexhausted, as Petitioner failed to raise them on direct appeal to the Appellate Division.[4] Petitioner no longer has an available state court forum in

---

[3]In the spirit of Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), the Court has provided copies of all unpublished decisions cited in this Report and Recommendation to Petitioner.

[4]In a pro se letter to the Court of Appeals dated April 1, 2009, submitted while Petitioner's application for leave to appeal was still pending, Petitioner raised these sufficiency of the evidence claims for the first time. Resp't's Ex. 4. However, this letter is insufficient to

which to raise these claims; if Petitioner were now to assert these claims in a motion to vacate her judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10, they would be dismissed. See N.Y. Crim. Proc. L. § 440.10(2)(c)(court "must" deny claim raised in motion to vacate where claim could have been raised on direct appeal but was not). Therefore, these claims are deemed exhausted but procedurally defaulted. Petitioner has failed to establish cause and prejudice for the default, or that a miscarriage of justice will occur if this Court fails to consider these claims. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Thus, I conclude, and respectfully recommend that Your Honor should conclude, that claims two and three of the Petition should be denied.

### B. Petitioner's ineffective assistance of counsel claim is unexhausted.

Petitioner's final claim for habeas relief is that her trial counsel provided ineffective legal assistance by failing to undertake an adequate investigation, prepare for trial, or advise Petitioner of her likely sentence if convicted. Petitioner has not exhausted this claim because she did not raise it on direct appeal. However, Petitioner is likely not procedurally barred from raising this claim in a motion to vacate pursuant to N.Y. Crim. Proc. L. § 440.10, as this claim, unlike claims two and three, is based on matters outside the record. Therefore, this claim simply remains unexhausted.

A court confronted with a habeas petition containing both exhausted and unexhausted

---

fairly present any such claims to the state courts. As review by the Court of Appeals is discretionary, not as of right, raising a claim for the first time in an application to the Court of Appeals does not exhaust the claim. See Castille v. Peoples, 489 U.S. 346, 352 (1989)(claim not fairly presented to state courts where it is raised "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor" (internal quotations omitted)); Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000)(raising claim for the first time in application to the New York Court of Appeals insufficient for exhaustion).

claims, a so-called "mixed petition," has several options. First, the court may dismiss the entire petition for failure to comply with AEDPA's exhaustion requirement. 28 U.S.C. § 2254(b)(1)(A). Second, the court may deny even the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2). Third, the court retains discretion to stay the petition and permit the petitioner to exhaust the unexhausted claims in state court, but only where the petitioner has shown good cause for failure to previously exhaust and that the unexhausted claims are not plainly meritless. Rhines v. Weber, 544 U.S. 269, 278 (2005). Fourth, where the court determines that neither a stay nor a dismissal of the petition for failure to exhaust is appropriate, the court may permit the petitioner to amend the petition to delete the unexhausted claims. See Johnson v. Kirkpatrick, No. 11 Civ. 1089(CM)(AJP), 2011 WL 3328643, at *12-13 (S.D.N.Y. August 3, 2011). Alternatively, where the limitations period has run, the Court may deem the petition to have been amended to delete the unexhausted claims, under the assumption that the petitioner would prefer the court to consider the exhausted claims on the merits instead of dismissing the petition for failure to exhaust and foreclosing any return to federal court. Id.

Here, I conclude that dismissal of the entire Petition for failure to exhaust would be inappropriate. The AEDPA limitations period has long since run, so dismissal of the entire petition for failure to exhaust this claim would prevent Petitioner from ever returning to federal court. Staying the Petition to permit Petitioner to exhaust her ineffective assistance of counsel claim is likewise inappropriate, since Petitioner has provided no reason for her failure to first raise this claim in state court. An analysis of the merits of this claim is impossible, as Petitioner has provided only conclusory allegations of ineffectiveness. Thus, I conclude, and respectfully recommend that Your Honor should conclude, that the Court should simply deem Petitioner to

have amended the Petition to delete this claim.[5]

### III. CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the instant Petition should be dismissed.

### IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Vincent Briccetti, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: August 9, 2013
White Plains, NY

Respectfully submitted,

_____
LISA MARGARET SMITH

---

[5] In the event that Petitioner makes substantive objections to my recommendation that this claim be deemed deleted, I respectfully request that Your Honor remand the Petition to me for further review of this claim.

13

                                      United States Magistrate Judge
                                      Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Vincent Briccetti, U.S.D.J.

Akilah Whitley
#07-G-1183
Bedford Hills Correctional Facility
247 Harris Road
Bedford Hills, NY 10507

John J. Sergi
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601